**GRENVILLE PRIDHAM, ESQ.**
CA Bar No. 120695
2230 West Chapman Avenue
Orange, CA 92868

Phone: 714-486-5144
grenville@grenvillepridham.com
Attorney for Plaintiff

**United States District Court**

**Central District of California**

| | |
|---|---|
| Rocio Medel, an individual<br><br>                    Plaintiff,<br><br>v.<br><br>New Penn Financial, LLC, a Delaware LLC, dba Shellpoint Mortgage Servicing; Old Republic National Title Insurance Company, a Minnesota corporation, dba  Old Republic Default Management Services; and DOES 1 through 100,<br><br>                    Defendants. | Case No. 8:15-cv-00368<br><br>COMPLAINT FOR Damages and Injunctive Relief<br><br>***Jury Trial Demanded***<br><br>**VIOLATIONS OF CALIFORNIA'S HOMEOWNERS' BILL OF RIGHTS**<br>1)   Violation of Civil Code § 2923.55(c);<br>2)   Violation of Civil Code § 2923.6(a) and 2923.6(b);<br>3)   Violation of Civil Code § 2923.6(c);<br>4)   Violation of Civil Code § 2923.6(f);<br>5)   Violation of Civil Code § 2923.7;<br>6)   Violation of Civil Code § 2924.10;<br>7)   Violation of Unfair Competition Law (Bus. & Prof. Code § 17200);<br>8)   Negligence;<br>9)   Breach of Implied Covenant of Good Faith and Fair  Dealing; and<br>10)  Declaratory Relief |

## C O M P L A I N T and **JURY DEMAND**

Plaintiff, Rocio Medel, by and through her counsel, Grenville Pridham, Esq., for her

Complaint against Defendants, alleges and states as follows:

## INTRODUCTION

1.  Plaintiff Rocio Medel ("Plaintiff or Mrs. Medel") brings this complaint for injunctive relief and damages due to "dual tracking" and other violations of the California Homeowners' Bill of Rights by defendants New Penn Financial, LLC, dba Shellpoint Mortgage Servicing, (Hereinafter referred to as "Shellpoint Mortgage Servicing") and Old Republic National Title Insurance Company, dba Old Republic Default Management Services (Hereinafter referred to as "Old Republic Default Management Services").

2.  The "California Homeowner Bill of Rights" (Assem. Bill No. 278; Sen. Bill No. 900 (2011–2012 Reg. Sess.)), was signed into law on July 11, 2012, and became effective January 1, 2013.   The Act was codified in the California Civil Code §§ 2920.5 *et seq.*

3.  This lawsuit arises because Shellpoint Mortgage Servicing, a mortgage loan servicer, failed to follow the requirements of the Homeowners' Bill of Rights and conduct a loan modification process fairly and in good faith.

4.  The mortgage loan servicer either negligently, or intentionally,

    (1)   requested that Mrs. Medel send the same documents multiple times,

    (2)   denied that they received documents which were in fact either faxed or emailed,

    (3)   failed to send written acknowledgment of receipt of documents,

    (4)   failed to review bank records,

    (5)   would send letters that had inaccurate information about Mrs. Medel's financial situation,

    (6)   would tell Mrs. Medel on the telephone that her loan modification was denied before a deadline to receive documents had occurred,

    (7)   would tell Mrs. Medel on the telephone that her loan modification had been denied and then send letters to Mrs. Medel requesting documents to proceed with the review of her loan modification application,

    (8)   failed to specify which documents were missing when informing Mrs. Medel that she was missing documents,

    (9)   recorded a Notice of Trustee's Sale while a loan modification was pending,

COMPLAINT

*Medel v.  New Penn Financial, LLC*

(10)   sent form letters with false and inaccurate statements that documents were not submitted,

(11)   falsely represented that the application had been sent, or would be sent, to underwriting, when in fact it had not,

(12)   failed and/or refused to conduct requested net present value calculations, and

(13)   generally, did not review the entire loan modification application fairly, if even at all.

5.   Defendants' misrepresentations to Plaintiff that the loan modification application had been denied prior to having been reviewed; scheduling a trustee's sale while a loan modification application was pending, failing to provide the underlying numbers and their source for the verbal decisions to deny the loan modification application, and many other acts as more fully detailed within this Complaint, amount to violations of the California Homeowners' Bill of Rights, Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq*.), and constitute a breach of contract, negligence, and the tort of not dealing in good faith with Mrs. Medel.

6.   Plaintiff requests injunctive relief ordering Shellpoint Mortgage Servicing to cease its unlawful acts and/or practices under the California Homeowners' Bill of Rights.

## DIVERSITY JURISDICTION

7.   Diversity jurisdiction exists because this is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000.00.  28 U.S.C. § 1332.

8.   Jurisdiction over supplemental state law claims arises pursuant to 28 U.S.C. § 1367.

9.   Declaratory relief is available pursuant to 28 U.S.C.  §§ 2201 and 2202.

## VENUE

10.   *In personam* jurisdiction exists and venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c).  Defendants regularly do business in this district.  Plaintiff resides in this district in the residence that is the subject of this Complaint, and the alleged violations were committed against her in this district.

COMPLAINT
*Medel v.  New Penn Financial, LLC*

## **PARTIES**

11.  Plaintiff, Rocio Medel, is an individual, who is a resident of the city of Anaheim, Orange County, California.

12.  Defendant, New Penn Financial, LLC, is a Delaware Limited Liability Company, dba Shellpoint Mortgage Servicing.

13.  Shellpoint Mortgage Servicing services mortgage loans and operates throughout the state of California.

14.  Upon information and belief, Shellpoint Mortgage Servicing is a business entity of unknown origin, that is separate and distinct from New Penn Financial, LLC.

15.  Upon information and belief, Shellpoint Mortgage Servicing is not registered with the California Secretary of State.

16.  Plaintiff is without knowledge whether Shellpoint Mortgage Servicing is legally authorized to do business in the State of California.

17.  Shellpoint Mortgage Servicing foreclosed on more than 175 residential real properties, containing no more than four dwelling units, that are located in California, during its immediately preceding annual reporting period, as established with its primary regulator.

18.  Defendant, Old Republic National Title Insurance Company, dba Old Republic Default Management Services, is a Minnesota corporation, and does business throughout the state of California that processes foreclosure paperwork for mortgage loan servicers and creditors.

19.  The true name and capacities; whether individual, corporate or associate, or otherwise, of the defendants named herein as DOES l to 100; inclusive, are unknown to Plaintiff, who therefore, sues said defendants by such fictitious name.

20.  At all times mentioned, each of the defendants, including the defendants named as DOES herein, was the agent and/or employee of each of the remaining defendant and in doing the things mentioned herein was acting within the scope of such agency and/ or employment.

21.  All Defendants, and Does 1 - 100, encouraged, authorized, ratified, adopted and/or acquiesced to all of the actions and conduct of the other Defendants.   All acts of corporate employees were authorized or ratified by an officer, director, or managing agent of the corporate employer.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

22.   Plaintiff is informed and believes and therefore alleges that each of the Defendants designated as a DOE Defendant is responsible in some manner for the events and happenings herein referred to and directly and proximately caused the damages suffered by the Plaintiff.

23.   Plaintiff will ask leave of this Court to amend the complaint to insert the true names and capacities of said DOE Defendants when the same has been ascertained together with the proper charges and allegations.

24.   Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

25.   Unless otherwise stated, Plaintiff alleges that any violations by Defendants were knowing and intentional, and that Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## FACTS

## GENERAL ALLEGATIONS

26.   Plaintiff is the owner of residential real property situated in Orange County, known as _____, Anaheim, CA 92806, which is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes as defined by Civil Code § 2924.15.

27.   Plaintiff purchased this property on or about June 14, 2005.

28.   On information and belief, the mortgage was transferred several times and is now held by The Bank of New York Mellon FKA the Bank of New York, as Trustee for the Certificateholders of The CWABS, Inc., Asset-backed Certificates, Series 2005-M.

29.   The mortgage is currently serviced by Defendant Shellpoint Mortgage Servicing.

30.   Mrs. Medel's real estate business and her husband's business faltered after the Great Recession of 2008.  Additionally, her husband was unable to work for about a year because of health problems and their combined income was substantially reduced.  Their incomes were so severely impacted by the economic downturn of 2008, that by early 2010 Mrs. Medel could not keep up with her obligations on the mortgage.

31.   Mrs. Medel began to default on the mortgage in early 2010.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

32. In 2012, Mrs. Medel began making her monthly payment, however the loan servicer refused to accept the payments.

33. Mrs. Medel requested a loan modification from 2010 to present and was in the middle of the process when the former loan servicer transferred servicing rights to Shellpoint Mortgage Servicing.

34. After the loan was transferred to Shellpoint Mortgage Servicing, Mrs. Medel requested a loan modification.   Shellpoint Mortgage Servicing initially refused to send Mrs. Medel a package for a loan modification.   Mrs. Medel had to request the loan modification package three times before she finally received a loan modification application to complete.

35. Mrs. Medel pursued a loan modification through Shellpoint Mortgage Servicing starting approximately in 2013.

36. Mrs. Medel was told by representatives of Shellpoint Mortgage Servicing that they would not give her a loan modification before they even received her application.

37. Although Shellpoint Mortgage Servicing sent a form letter dated May 30, 2014, stating that Tara Merino was assigned as the single point of contact, Ms. Merino was rarely available to speak with Mrs. Medel.

38. On or about July 14, 2014, Shellpoint Mortgage Servicing sent Mrs. Medel a form letter denying her application for a loan modification.

39. On August 12, 2014, counsel for Mrs. Medel prepared a lengthy appeal letter on her behalf.  The appeal was served via email and certified mail.

40. An authorization for counsel to speak with Shellpoint Mortgage Servicing about Mrs. Medel's application was included with the letter of Appeal.

41. On August 20, 2014, Shellpoint Mortgage Servicing mailed two separate form letters to Mrs. Medel.  One letter stated that "Shellpoint Mortgage Servicing has received your request for a loss mitigation program.  We are currently reviewing your initial documentation package to determine if the referenced loan qualifies for one of our programs."

42. Letter One from August 20, 2014, stated, "If your foreclosure process has been initiated, we may be unable to stop a sale where a court with jurisdiction over the foreclosure proceeding

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1    (if any) or public official charged with carrying out the activity could fail or refuse to halt a

2    scheduled foreclosure sale."

3        43.  Plaintiff is unaware of any situation where a creditor could not halt a foreclosure sale.

4        44.  Defendants' statement that it might be unable to stop a sale during the pendency of a loan

5    modification process is misleading and confusing and constitutes a violation of the Homeowners'

6    Bill of Rights.

7        45.  Letter Two from August 20, 2014, generically stated that Mrs. Medel had not provided all

8    documentation previously requested without specifying what documentation was missing, and set

9    a deadline of September 19, 2014, to submit "required documents."   The letter stated that:

10           Shellpoint Mortgage Servicing ("Shellpoint") has received your
             request for a loss mitigation program. However, you have not
11           provided all the documentation previously requested. If we do not
             receive the required documents by 9/ 19/20 14, we may conclude
12           that you have withdrawn your request for a modification and may
             resume other means to collect any amounts due on your account.
13           To proceed with your request for a modification, you must submit
             the documents marked with an "X" to Shellpoint.
14
15           The evaluation process will begin when we receive all required
             documentation."

16       46.  Additionally, Letter Two from August 20, 2014, had nine pages of forms attached for

17    Mrs. Medel to complete and return to Defendant Shellpoint Mortgage Servicing.   Mrs. Medel

18    had already completed the exact same forms at least twice before and submitted them to

19    Defendant Shellpoint Mortgage Servicing.

20       47.  Shellpoint Mortgage Servicing never responded directly to counsel's appeal letter.

21    Instead, On September 8, 2014, Shellpoint Mortgage Servicing sent Mrs. Medel a letter that

22    incorrectly stated that her counsel was not authorized to speak on the account or receive

23    information, even though the authorization was sent with the Appeal Letter.

24       48.  This one statement about Mrs. Medel's counsel in the Letter dated September 8, 2014,

25    shows how negligent and/or wilfully intentional Shellpoint Mortgage Servicing was in handling

26    Mrs. Medel's paperwork.  Shellpoint Mortgage servicing received the authorization in at least

27    two different methods; 1) via email, and 2) via certified mail.  The fact that Shellpoint Mortgage

28    Servicing could not properly process the authorization makes one wonder how they processed

     any document submitted by Mrs. Medel or any other borrower.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

49. The September 8, 2014, letter from Shellpoint Mortgage Servicing additionally stated:

    (1)    documents were missing, without specifying what documents were still required, and

    (2)    in an obtuse and vague manner, claimed to require additional, unspecified, information to address the issues raised in the Appeal Letter.

50. The September 8, 2014, letter failed to discuss the requested net present value calculations.

51. On or before the deadline of September 19, 2014, Mrs. Medel faxed another loan modification application and documentation totaling 31 pages to Shellpoint Mortgage Servicing.

52. Counsel for Mrs. Medel additionally emailed and mailed via certified mail, the 31 pages and another signed third-party authorization to Shellpoint Mortgage Servicing, on September 19, 2014.

53. Mrs. Medel did not receive a written acknowledgment of this application in five days as required by Homeowners' Bill of Rights.

54. On September 25, 2014, Mrs. Medel faxed an additional 54 pages to Shellpoint Mortgage Servicing to include in the review.

55. Shellpoint Mortgage Servicing did not send written acknowledgment of receipt of these documents.

56. By form letter dated, September 26, 2014, Shellpoint Mortgage Servicing stated; "We are unable to offer you a loss mitigation option because you did not provide us with the documents we requested.  We have notified you of the specific documents we need and the time frames required to provide them to us."  This form letter makes no reference to the documents sent by Mrs. Medel and counsel on September 19, 2014, nor did it reference the 54 pages that had been sent the day before (September 25, 2014) by fax.

57. Mrs. Medel called Shellpoint Mortgage Servicing and informed them that she had sent the documents on September 19, and September 25, 2014.   As a result of calls with Shellpoint Mortgage Servicing representatives, Mrs. Medel sent the same 54 pages of documents again on October 9, 2014.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

58. By form letter dated October 14, 2014, Shellpoint Mortgage Servicing stated that "you [Mrs. Medel] have not provided all the documentation previously requested." The form letter also had a list of documents that included documents that Mrs. Medel had already sent.

59. The October 14, 2014, letter from Shellpoint Mortgage Servicing also required that Mrs. Medel send a "copy of the mortgage statement showing the principal, interest, taxes, and insurance amounts (must be dated less than 90 days old at the time the complete package is received)."

60. Shellpoint Mortgage Servicing is the loan servicer and prepares the mortgage statements. It is unfair and deceptive to demand that a borrower supply a document that the loan servicer creates.

61. Shellpoint Mortgage Servicing sent a form letter, dated December 9, 2014, stating, generically, that Mrs. Medel had not provided all of the information requested. The letter specifically stated:

> We are unable to offer you a loss mitigation option because you did not provide us with the documents we requested. We have notified you of the specific documents we need and the time frames required to provide them to us.
>
> If you have questions about this letter and how to reinstate your mortgage, please contact us at 866-825-2 1 74. Once you reinstate your loan, if you subsequently experience a financial hardship, please contact us to request reconsideration for mortgage payment assistance or other foreclosure prevention alternative.
>
> Sincerely,
>
> Shellpoint Mortgage Servicing

62. The Shellpoint Mortgage Servicing Letter dated December 9, 2014, failed to state what items or documents were missing or were required. This letter also did not come from the designated single point of contact. The designated single point of contact also failed to contact Mrs. Medel about the letter of denial.

63. Before and after receiving the Shellpoint Mortgage Servicing December 9, 2014, Mrs. Medel was in regular telephone communication with Shellpoint Mortgage Servicing trying to obtain specific information on what would be needed and what the standard for obtaining a loan modification is.

COMPLAINT

*Medel v. New Penn Financial, LLC*

64. After receiving the December 9, 2014, Shellpoint Mortgage Servicing Letter , Mrs. Medel called Shellpoint Mortgage Servicing and asked what was required.  Mrs. Medel was verbally told what to send and Mrs. Medel sent more documents via fax on or about December 19, 2014.

65. Shellpoint Mortgage Servicing did not acknowledge receipt of the documents faxed on December 19, 2014.

66. Shellpoint Mortgage Servicing conducted the loan modification process in a manner that left Mrs. Medel feeling that Shellpoint Mortgage Servicing was continually raising the bar to complete the process.

67. Every time Mrs. Medel would supply requested documents, Mrs. Medel would be told that she either did not send documents or that she needed to send more documents.

68. At one point, she was told to ignore the form letters as they simply crossed in the mail while either she was gathering documents or Shellpoint Mortgage Servicing was processing already received documents so they could be scanned or imaged and inputed into the Shellpoint Mortgage Servicing computer system.

69. Shellpoint Mortgage Servicing customer service representatives would tell Mrs. Medel that she could ignore the form letters because Shellpoint Mortgage Servicing had received her documents and was reviewing the application.

70. Mrs. Medel's perspective during this time was that either Shellpoint Mortgage Servicing did not have an efficient or timely method to process their incoming mail and faxes or they were intentionally giving her the runaround and putting her off until they would just tell her they were going to finalize the foreclosure.

71. At no time during this process did Mrs. Medel receive any correspondence with detailed information acknowledging what documents she had already sent.  The letters that Mrs. Medel received from Shellpoint Mortgage Servicing were almost always form letters that used vague statements to say that she had not submitted "required documents" or listed documents that she sent as not having been submitted.

72. Additionally, Mrs. Medel was never allowed to speak to anyone who supposedly reviewed the file and the numbers.  No one from Shellpoint Mortgage Servicing, who Mrs.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1  Medel was allowed to speak with, was ever remotely familiar with her file or her financial

2  records.

3      73.  Mrs. Medel felt that the Shellpoint Mortgage Servicing customer service representatives

4  mostly tried to discourage her from pursuing the loan modification and would provide her with

5  no information or incorrect information, or tell her that her loan modification would be denied or

6  had already been denied, even though no review had occurred.

7      74.  When Mrs. Medel would ask what figures they were using for their review and

8  calculations, she would be told that someone else had those numbers.

9      75.  Mrs. Medel did not receive any other letter from Shellpoint Mortgage Servicing telling

10  her that her application was deficient or listing any additional documents that were needed.

11      76.  On or about December 22, 2014, Mrs. Medel received a Substitution of Trustee.  The

12  substitution purported to have been notarized in Texas.

13      77.  Although, Shellpoint Mortgage Servicing sent a form letter, dated December 9, 2014,

14  purporting to deny the loan modification, Shellpoint Mortgage Servicing representatives

15  continued to speak to Mrs. Medel about the loan modification and told her it was still pending

16  because she had sent in additional documents.

17      78.  On or about January 21, 2015 Mrs. Medel called Shellpoint Mortgage Servicing to

18  inquire about the loan modification.  She spoke with a Rickie at approximately 1:04 PM.  After

19  Rickie verified her identity, Mrs. Medel asked to please talk to the person in charge of her file.

20  Rickie said, "O.k. let me see if he is available, if not I will assist you with any questions o.k."

21  Mrs. Medel answered, "OK."  Rickie came back on the line and said he had was available, I am

22  going to transfer you.  Hold on."  Rickie transferred Mrs. Medel to Nick.

23      79.  When Nick answered he said, " Hi, this is Nick.  Were you demanding to speak to me?"

24  Nick seemed to be annoyed that he had to speak with Mrs. Medel.

25      80.  Mrs. Medel said, "No, I requested to speak to the person in charge of my file."

26      81.  Nick told Mrs. Medel that "He was trying to give you the information. We never received

27  the requested documents."

28      82.  Mrs. Medel told Nick that she had sent everything on the 19th of December and that she

had her fax confirmation.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

83.  Nick then acknowledged receipt of the documents and said, "We got bank statements and they were outdated.  We need a whole new package.  Make sure you send a letter of explanation, new Profit & Loss, RMA, Dodd Frank, 4506T.  On income tax 1099, send Letter saying 'I don't receive any income from them anymore.'  Need some letter explanation.  There is going to be a letter of denial cause we didn't receive the requested documents.  Send new package and follow up 2 or 3 business days after.  You don't need to talk directly to me."

84.  Somewhere in the conversation, Mrs. Medel asked if the file was sent to underwriting and Nick's answer was, "yes."

85.  The telephone call on January 21, 2015, was typical of the conversations that Mrs. Medel had with various representatives from Shellpoint Mortgage Servicing.  The representative would be dismissive of Mrs. Medel, tell her she did not send documents, or that the documents were outdated, and then tell her that denial of the loan modification was certain and imminent.

86.  Then when questioned, the representative would back pedal and admit that they did receive documents, but they were allegedly not recent enough or not the required documents, even though they never specifically stated what document was missing.

87.  It seemed odd that during conversations with Shellpoint Mortgage Servicing representatives, the representative on the phone would often state in no uncertain terms that the loan modification would be denied, even though that person would disclose that he/she was not responsible for reviewing the figures and would then provide information which indicated that the person who actually did the reviewing, either did not have the file yet, or had just been given the file.   In any event, it seemed that the representatives knew before the review was done by underwriting that the application would be denied.

88.  Other than the form letter dated December 9, 2014, Mrs. Medel never received a letter of denial stating any reasons why the loan modification application had been denied after she sent in her additional documents on December 19, 2014.

89.  Mrs. Medel never received a loan modification application denial letter as required by Homeowners' Bill of Rights.  After she sent a batch of documents in December 19, 2014, the next correspondence she received from Shellpoint Mortgage Servicing was the Notice of Trustee's sale, which was received mid February 2015.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

90.   On information and belief,  Plaintiff does not believe that Defendant Shellpoint Mortgage Servicing filed a Notice of Default, instead it relied on a Notice of Default which was recorded with the Orange County Recorder's Office on or about June 23, 2011.

91.   On or about February 4, 2015, Defendant Shellpoint Mortgage Servicing caused Defendant Old Republic Default Management Services to record a Notice of Trustee's Sale with the Orange County Recorder's Office.  The Notice of Trustee's Sale contained one sentence that stated: "The Declaration pursuant to California Civil Code, Section 2923.5(a) was fulfilled when the Notice of Default was recorded on 6/23/2011."

92.   The Notice of Trustee's Sale states that a sale is currently scheduled for **March 9, 2015**. Therefore, there is imminent harm as Mrs. Medel will lose her home based on a foreclosure that is in violation of the requirements of California's Homeowners' Bill of Rights.

93.   Defendant Shellpoint Mortgage Servicing's, and others, as yet unnamed defendants', conduct toward Plaintiff now and at all times herein mentioned constitutes fraud, malice and oppression within the meaning of California Civil Code §3294.

94.   Mrs. Medel provided the requested information within the specified time frame. However, she never received any confirmation from the mortgage servicer regarding the next step in the negotiations.  Instead, her repeated inquiries were met with "passing the buck" by representatives, who transferred calls repeatedly to different people in different "departments."

95.   Ultimately, the response she would receive was that she needed to resubmit the requested information, as it had gotten stale by the passage of time, or it was denied to have been received.

96.   Mrs. Medel participated in the charade of "re-submitting" the same information requested by the loan servicer multiple times.

97.   In response, all she received were excuses and vague statements that the information had been lost, misplaced, or was being handled by someone else in a different department who would ultimately respond once the "paperwork was ready."

98.   Of course the paperwork never would be "ready."   Instead, Defendant Shellpoint Mortgage Servicing, through its third party agent, Old Republic Default Management Services Company, caused to be delivered by certified mail a Notice of Trustee's Sale that was dated,

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1  February 4, 2015.   The Notice of Trustee's Sale states the home will be sold at auction on

2  **March 9, 2015.**

3    99.  The real property, like all real property, is unique and special to plaintiff such that money

4  damages and legal remedies will be insufficient to compensate her for the loss of her home.

5    100.    Mrs. Medel is informed and believes and based thereon alleges that the

6  Defendants have been at all times engaged in a shell game. The game essentially involved

7  stringing Mrs. Medel along with promises of refinance/modification, and requests for

8  information, all the while moving intently and purposefully toward a foreclosure on her family

9  home.

10    101.    Mrs. Medel relied to her detriment on this shell game in the sense that she did not

11  seek alternatives to refinancing with Shellpoint Mortgage Servicing, such as short sale,

12  refinancing elsewhere, or the like.  Regardless, as set forth below Defendants had and have a duty

13  under California law to negotiate in good faith and to not engage in the prohibited and deceitful

14  practice of "dual tracking" the home loan modification process with foreclosure proceedings.

15                **FIRST CAUSE OF ACTION**

16            **Violations of the Homeowners' Bill of Rights**
                  Civil Code § 2923.55(c)
17      **Failure to Record Mandatory Compliance Declaration of Due Diligence**

18               **(Against Shellpoint Mortgage Servicing)**

19    102.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

20    103.    California Civil Code § 2923.55(c) states:

21          (c) A notice of default recorded pursuant to Section 2924 **shall
            include a declaration** that the mortgage servicer has contacted the
22          borrower, has tried with due diligence to contact the borrower as
            required by this section, or that no contact was required because
23          the individual did not meet the definition of "borrower" pursuant to
            subdivision (c) of Section 2920.5. [emphasis added].
24

25    104.    Shellpoint Mortgage Servicing did not file or record a declaration as defined by

26  California Civil Code § 2923.55(c).   Consequently, the defendants are in violation of Civil Code

27  § 2923.55(c).

28

COMPLAINT
*Medel v.  New Penn Financial, LLC*

105.     The statement by the Defendants that they complied in 2011 with a law that was not passed until 2012 is additional proof of the negligent, if not intentionally willful manner, that Defendants have behaved and how they have treated Mrs. Medel during the loan modification process.

106.     The Defendants failure to record this mandatory Compliance Declaration has caused Mrs. Medel actual prejudice because the loan servicer did not contact her as required and she was deprived of the opportunity of explaining her current financial situation and deprived of a fair and unbiased evaluation and review of her loan modification application.

107.     Defendants failed to exercise due diligence in processing Mrs. Medel's loan modification application because they kept requesting Mrs. Medel submit the same documents; claimed required documents had not been submitted, when in fact they had been; claimed that documents that were four months old were too stale to use, no matter what, and failed to evaluate present net value of the situation pursuant to Civil Code § 2923.6(a) and (b).

108.     Shellpoint Mortgage Servicing frustrated the ability of Mrs. Medel to ever have a complete file and then failed to record a Compliance Declaration of Due Diligence.

109.     Based upon the above allegations, the Defendants are in violation of Civil Code § 2923.55(c).

110.     The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

111.     The defendants' willful disregard of the requirements of the Homeowners' Bill of Rights, as set forth in this complaint, constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

112.     Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

113.     Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

## SECOND CAUSE OF ACTION

**Violations of the Homeowners' Bill of Rights
Civil Code §§ 2923.6(a) and 2923.6(b) )
Failure to Calculate whether anticipated recovery under the
loan modification or workout plan exceeds the anticipated
recovery through foreclosure on a net present value basis.**

**(Against Shellpoint Mortgage Servicing)**

114.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

115.     Civil Code § 2923.6(a) and § 2923.6(b) provide:

(a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

116.    Based upon current real estate values in Orange County, California, the high expenses associated with a foreclosure, and the fact that foreclosure sales rarely lure buyers willing to pay as much as the homeowner will pay over the life of the loan, Mrs. Medel does not believe that Defendants will obtain any amount close to what she is capable of paying now and in the future.

117.    Defendants failed to calculate a net present value analysis.

118.    Consequently, plaintiff's application is still pending and defendants have filed a Notice of Default and Notice of Trustee's Sale in violation of § 2923.6(c).

COMPLAINT

*Medel v.  New Penn Financial, LLC*

119.     Plaintiff has suffered actual damages because her opportunity to modify her loan may have been lost and she has been denied the peace of mind of being treated fairly and in good faith.

120.     The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

121.     The defendants' willful disregard of the requirements of the Homeowners' Bill of Rights, as set forth in this complaint, constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

122.     Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

123.     Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

<u>**THIRD CAUSE OF ACTION**</u>

**Violations of the Homeowners' Bill of Rights**
**Civil Code § 2923.6(c)**
**Dual Tracking Violation —**
**Recording Notice of Trustee's Sale while Loan Modification was Pending**

**(Against All Defendants)**

124.     Plaintiff realleges and incorporates by reference all preceding paragraphs**.**

125.     The California Homeowners' Bill of Rights states: "It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a plan is consistent with its authority."  California Civil Code § 2923.6(b).  If a borrower submits financials toward a loan modification effort, then the servicer shall not conduct a trustee's sale while the application is pending and the servicer must make a written determination that the borrower is ineligible.  Civil Code § 2923.6(c).

126.     Mrs. Medel has been actively engaged in loan modification negotiations with the loan servicer while the loan servicer has been taking the necessary steps to conduct a trustee's sale.  This is in direct violation of the California Homeowners' Bill of Rights.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

127.     Mrs. Medel could not obtain a straight answer from any of the loan servicer's myriad number of purported representatives.  Instead she has been shuttled from one "department" within the monolithic corporate structure to the next.   This is a primary wrong that the California Homeowners' Bill of Rights was meant to right.

128.     2923.6(c) provides in pertinent part:

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs: [emphasis added]
>
>      (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

129.     A complete loan application is defined in 2923.6(h) as:

> (h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

130.     Here the defendants did not comply with Civil Code § 2923.55(c) and § 2923.6(c) because they never gave the plaintiff the opportunity to complete an application and then recorded the Notice of Trustee's Sale while her loan modification application was pending.

131.     Based upon the above allegations, the Defendants are in violation of Civil Code § 2923.55(c) and §2923.6(c).

132.     The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

133.     The defendants' willful disregard of the requirements of the Homeowners' Bill of Rights, as set forth in this complaint, constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

134.     Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

135.     Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

## FOURTH CAUSE OF ACTION

### Violations of the Homeowners' Bill of Rights
### Civil Code § 2923.6(f)
### Failure to Provide Reason for Denial

### (Against Shellpoint Mortgage Servicing)

136.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

137.      California Civil Code§ 2923.6(f) requires a servicer provide a reason in the written denial of a loan modification.

138.     California Civil Code§ 2923.6(f) provides:

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following: [emphasis added]

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

139.     Defendants did not send Plaintiff a written notice identifying specific reasons for denial.

140.     To the extent that Defendants stated any reasons for denying the loan modification, those reasons were false and inaccurate and not based upon the facts in the application submitted by Mrs. Medel.

COMPLAINT
*Medel v.  New Penn Financial, LLC*

141.      Defendants would send out form letters of denial of loan modification while still engaging in loan modification discussions with Mrs. Medel.

142.      Defendants would orally rescind letters of denial by requesting additional documentation from Mrs. Medel and telling her that the application would be submitted to underwriting, and telling her that a letter of denial would be forthcoming if the loan modification was denied.

143.      After Mrs. Medel sent in the last batch of documents, Nick told Mrs. Medel that a letter of denial would be sent.

144.      Defendants did not send a letter of denial after Mrs. Medel sent in the last batch of documents.

145.      Consequently, plaintiff's application is still pending and defendants have filed a Notice of Default and Notice of Trustee's Sale in violation of § 2923.6(c) and related sections.

146.      Plaintiff has suffered actual damages because her opportunity to modify her loan may have been lost and she has been denied the peace of mind of being treated fairly and in good faith.

147.      The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

148.      The defendants' willful disregard of the requirements of the Homeowners' Bill of Rights, as set forth in this complaint, constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

149.      Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

150.      Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1

## FIFTH CAUSE OF ACTION

2

**Violations of the Homeowners' Bill of Rights**
**Civil Code § 2923.7**
**Single Point of Contact**

3

4

**(Against Shellpoint Mortgage Servicing)**

5       151.      Plaintiff realleges and incorporates by reference all preceding paragraphs**.**

6       152.      Under the Homeowners' Bill of Rights, the mortgage servicer must establish a

7    single point of contact and provide one or more direct means of communication with the single

8    point of contact.  Civil Code § 2923.7(a).  That contact shall be responsible for communicating

9    the process for foreclosure prevention alternatives and coordinating receipt of all documents

10   associated with the loan modification.  Civil Code § 2923.7(b)(1).   Further, that point of contact

11   shall have access to all current information and timely provide same to adequately inform the

12   borrower.   Civil Code § 2923.7(b)(2) and (3).

13      153.      Additionally, 2923.7(b)(2) clearly requires the Single Point of Contact timely

14   notify a borrower of any missing documents necessary to complete the application.

15      154.      California Civil Code § 2923.7 requires that a mortgage servicer promptly

16   establish a single point of contact once a borrower requests a foreclosure prevention alternative.

17      155.      Shellpoint Mortgage Servicing did not send Mrs. Medel a Single Point of Contact

18   letter until on or about May 30, 2014.

19      156.      Although Shellpoint Mortgage Servicing sent a form letter on or about May 30,

20   2014, naming a single point of contact, that named person was rarely available.  The Shellpoint

21   Mortgage Servicing representatives who spoke with Mrs. Medel did not seem to be

22   knowledgeable about or familiar with Mrs. Medel's file.

23      157.      After Mrs. Medel mentioned that the named single point of contact was not

24   available, a second named person was given to Mrs. Medel, however, he too was frequently not

25   available, acted annoyed when he did speak with Mrs. Medel, and he never provided specific

26   written information as required by Civil Code § 2923.6, §2923.10,  and other sections of the

27   Homeowners' Bill of Rights.

28

COMPLAINT

*Medel v.  New Penn Financial, LLC*

158.     Consequently, plaintiff's application is still pending and defendants have filed a Notice of Default and Notice of Trustee's Sale in violation of § 2923.7.

159.     The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

160.     The defendants' willful disregard of the requirements of the Homeowners' Bill of Rights, as set forth in this complaint, constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

161.     Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

162.     Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

## SIXTH CAUSE OF ACTION

**Violations of the Homeowners' Bill of Rights**
**Civil Code § 2923.10**
**Dual Tracking Violations —**
**Failure to Provide Written Acknowledgment of Receipt of Documents Within 5 Days,**
**Failure to Send List of Any Expiration Dates for Submitted Documents,**
**Failure to State Deadlines as to When Documents Were Required, and**
**Failure to Specifically List Deficiencies in Application**

### (Against Shellpoint Mortgage Servicing)

163.     Plaintiff realleges and incorporates by reference all preceding paragraphs**.**

164.     California Civil Code § 2924.10 provides:

2924.10.  (a) When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer <u>shall provide written acknowledgment</u> of the receipt of the documentation <u>within five business days of receipt</u>. In its initial acknowledgment of receipt of the loan modification application, the mortgage servicer shall include the following information:   [emphasis added]

(1) A description of the loan modification process, including an estimate of when a decision on the loan modification will be made after a complete application has been submitted by the borrower and the length of time the borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

(2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first lien loan modification application.

(3) Any expiration dates for submitted documents.

(4) Any deficiency in the borrower's first lien loan modification application.

165.     Defendants failed to acknowledge plaintiff's request for a loan modification within the five business days as required and either did not send a list of deficiencies with deadlines as to when documents were required or sent a list that was inaccurate because the listed documents had already been submitted.

166.     The defendants failed to provide any specificity when telling Mrs. Medel that she is missing documents.   Defendants would simply state the "required documents" were not submitted, without any description of what the "required documents" were.

167.     To the extent that Defendants sent Plaintiff form letters indicating that her submissions were incomplete, those letters were inaccurate and false because they would list documents to be submitted even though Plaintiff already had submitted the documents.

168.     Defendants sent out form letters that purported to comply with the Homeowners' Bill of Rights, but in fact the form letters were inaccurate and misstated the nature of the documents that Mrs. Medel had supplied.

169.     Upon information and belief, Defendants acted in a pattern and practice of sending form letters that falsely stated that a borrower had not submitted required documents.

170.     Upon information and belief, Defendants acted in a pattern and practice of sending form letters that falsely stated the documents checked on a form list were required to be sent, when in fact the borrower had already sent the documents.

171.     Upon information and belief, Defendants acted in a pattern and practice of sending form letters that requested the same documents that a borrower had already sent.

172.     Upon information and belief, Defendants acted in a pattern and practice of sending form letters that stated generic and vague reasons for denial that were false and not based upon the borrower's information.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

173.     Defendants' conduct as stated above was intended to frustrate a borrower's ability to complete a loan modification application and therefore frustrate the borrower from obtaining a loan modification.

174.      California Civil Code§ 2923.6(c) requires that once a borrower has submitted a completed loan modification application a servicer <u>shall not</u> record a notice of default or sale or schedule a sale while the application is pending.

175.     Consequently, plaintiff's application is still pending and defendants have filed a Notice of Default and Notice of Trustee's Sale in violation of Civil Code § 2923.10 and § 2923.6(c).

176.     Plaintiff has suffered actual damages because her opportunity to modify her loan may have been lost and she has been denied the peace of mind of being treated fairly and in good faith.

177.     The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

178.     The defendants' willful disregard of the requirements of the Homeowners' Bill of Rights, as set forth in this complaint, constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

179.     Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

180.     Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

## SEVENTH CAUSE OF ACTION

**Violation of Unfair Competition Law
Business and Professions Code § 17200**

**(Against All Defendants)**

181.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

182.     Defendants are entities covered under the Homeowners' Bill of Rights statutes, Civil Code § 2923 *et. seq*.

183.     As stated above the defendants have clearly violated the requirements of the Homeowners' Bill of Rights statutes which cover the mortgage servicing and foreclosure processes in California.

184.     The purpose of Homeowners' Bill of Rights is to achieve an important end of providing borrowers with a fair opportunity to explore alternatives to foreclosure of their owner-occupied residences prior to foreclosure by a first lien holder.

185.     Violation of the Homeowners' Bill of Rights requirement is inherently unfair and unlawful.

186.     Defendants have engaged in, and continue to engage in, acts, omissions, misrepresentations, practices, and non-disclosures, which constitute unlawful, unfair, and fraudulent business acts and practices and unfair competition, within the meaning of California Business & Professions Code §s 17200 *et seq*.

187.     Defendants have violated, and continue to violate, Business and Professions Code § 17200 through their unlawful, unfair, fraudulent and/or deceptive business acts and/or practices.  Defendants uniformly concealed, failed to disclose and omitted important material information that was known only to Defendants and that could not reasonably have been discovered by Mrs. Medel or similarly situated  California consumers.  Based on Defendants' concealment, half-truths, and omissions, Mrs. Medel pursued a loan modification and repeatedly sent in documents as requested by the Defendant loan servicer.

188.     Defendants also repeatedly and knowingly made untrue and misleading statements in California regarding the processing of the loan modification and receipt of documents.  This

COMPLAINT

*Medel v.  New Penn Financial, LLC*

information was known only to Defendants and could not reasonably have been discovered by Mrs. Medel or similarly situated California consumers.

189.     As a direct and proximate result of Defendants' concealment and failure to disclose the Defendants' true intentions.  Defendants intended that Mrs. Medel would be misled into believing that the loan modification package would be complete only after she sent in yet another document.  In fact, the loan servicer never intended to give Mrs. Medel a loan modification and kept stringing her along until she would become exhausted and give up.

**<u>UNLAWFUL</u>**

190.     The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code § 17200.  Shellpoint Mortgage Servicing has engaged in "unlawful" business acts and practices by:

(1)     requesting that Mrs. Medel send the same documents multiple times,

(2)     denying that they received documents which were in fact either faxed or emailed,

(3)     failing to send written acknowledgment of receipt of documents,

(4)     failing to review bank records,

(5)     sending letters that had inaccurate information about Mrs. Medel's financial situation,

(6)     telling Mrs. Medel on the telephone that her loan modification was denied before a deadline to receive documents had occurred,

(7)     telling Mrs. Medel on the telephone that her loan modification had been denied and then send letters to Mrs. Medel requesting documents to proceed with the review of her loan modification application,

(8)     failing to specify which documents were missing when informing Mrs. Medel that she was missing documents, and

(9)     generally, not reviewing the entire loan modification application fairly, if even at all.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1        (10)    Causing to be recorded with the County Recorder's Office a Notice of Trustee's

2               Sale while a loan modification was pending;

3        (11)    engaging in the other acts alleged above.

4

5     191.      Defendants' unlawful business acts and/or practices as alleged herein have

6 violated numerous state, statutory and/or common laws - and said predicate acts are therefore per

7 se violations of § 17200. These predicate unlawful business acts and/or practices include, but are

8 not limited to, the following: California Business and Professions Code § 17500 (False

9 Advertising), California Civil Code § 1572 (Actual Fraud - Omissions), California Civil Code §

10 1573 (Constructive Fraud by Omission), California Civil Code § 1710 (Deceit), California Civil

11 Code § 2323 et seq. (the Homeowners' Bill of Rights) and other California statutory and

12 common law.

13

14 **UNFAIR**

15     192.      Defendants' concealment, omissions and misconduct as alleged in this action

16 constitute negligence and other tortious conduct and gave Defendants an unfair competitive

17 advantage over their competitors who did not engage in such practices. The Defendants'

18 justification for stringing a borrower along during the loan modification process, not handling a

19 loan modification fairly, and acting without the intention of ever offering a loan modification

20 based on the misrepresentations and omissions of material fact delineated above is outweighed

21 by the gravity of the resulting harm. Considering the available alternatives, Defendants'

22 practices and conduct offends public policy, is immoral, unscrupulous, unethical, and offensive,

23 or causes substantial injury to consumers.

24     193.      Concealing and failing to disclose the nature and extent of the loan modification

25 process to Mrs. Medel and  California consumers, as alleged herein, violated established law and

26 was and is directly contrary to established legislative goals and public policies which, among

27 other things, seek to promote:

28

COMPLAINT
*Medel v.  New Penn Financial, LLC*

(1) the intent of the Legislature that a mortgage servicer offer a borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

(2) reduce the number of foreclosures in California, and

(3) provide investors with a better situation than foreclosure would create. Therefore Defendants' acts and/or practices alleged herein were and are unfair within the meaning of Business and Professions Code § 17200.

194.     The harm to Mrs. Medel and California consumers outweighs the utility, if any, of Defendants' acts and/or practices as alleged herein.  Thus, Defendants' deceptive business acts and/or practices, as alleged herein, were unfair within the meaning of Business and Professions Code § 17200.

195.     As alleged herein, Defendants' business acts and practices offend established public policies, including but not limited to, public policies against making partial half truths and failing to disclose important material facts to consumers who are seeking residential mortgage loan modification.

196.     In addition, as alleged herein, Defendants intended that Mrs. Medel and California consumers would be misled and/or deceived into believing that they would be participating in a fair and reasonable loan modification process, when, in fact, they were merely given the charade of shuffling documents and requesting documents multiple times.  This practice is and was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and thus unfair within the meaning of Business and Professions Code § 17200.

197.     At all times relevant, Defendants' misconduct and omissions alleged herein: (a) caused substantial injury to Mrs. Medel and the Public; (b) had no countervailing benefit to Mrs. Medel or California consumers or to competition that could possibly outweigh this substantial injury; and (c) caused injury that could not have been avoided or even discovered by Mrs. Medel or ordinary consumers, because it resulted from Defendants' concealment, failure to disclose and/or omission of important related material information that only the Defendants knew or

COMPLAINT

*Medel v.  New Penn Financial, LLC*

could have known.  Thus, Defendants' acts and/or practices as alleged herein were unfair within the meaning of Business and Professions Code § 17200.

198.     The above described unlawful, fraudulent, or unfair business acts and practices conducted by Shellpoint Mortgage Servicing continue to this day and present a threat to Plaintiff and the general public in that Shellpoint Mortgage Servicing has failed to publicly acknowledge the wrongfulness of its actions and provide full equitable injunctive and monetary relief as required by the statute.

**<u>FRAUDULENT</u>**

199.     Defendants' acts and practices, as alleged herein, were likely to, and did, deceive Mrs. Medel and the Public.  Defendants' concealment, material omissions, acts, practices and non-disclosures, as alleged herein, therefore constitute fraudulent business acts and/or practices within the meaning of California Business and Professions Code § 17200 in that the representations and omissions of material fact described above have a tendency and likelihood to deceive the general public.

200.     Mrs. Medel has been, and continues to be, deceived by Defendants' concealment and material omissions as alleged herein.  Mrs. Medel has suffered injury in fact and lost money and property as a direct result of the deceptive conduct and unfair competition as alleged herein.

201.     The unlawful, unfair, deceptive and/or fraudulent business acts and practices of Defendants, as fully described herein, present a continuing threat to Mrs. Medel and the citizens of California to be misled and/or deceived by Defendants as alleged herein, and or to be substantially injured by these deceptive practices.

202.     Plaintiff is entitled to a permanent injunction that compels Shellpoint Mortgage Servicing to process loan modifications fairly and in good faith.

203.     Plaintiff is also entitled to a permanent injunction that compels Shellpoint Mortgage Servicing to notify all consumers who have been victims of the above-described illegal conduct, and enjoining Shellpoint Mortgage Servicing from such further acts of illegal conduct.

204.     Plaintiff's loss of her personal residence is imminent due to the fraudulent, untrue; unfair and unlawful actions of the defendants.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

205.          Base upon the above allegations, Defendants are in violation of Business & Professions Code § 17200.

206.          The defendants' actions and omissions in this case constitute unfair, deceptive acts and practices in the ordinary course of business of servicing a mortgage loan and processing a loan modification application and foreclosure under California Law.

207.          The defendants' willful disregard of the Plaintiff's rights as set forth in this complaint constitutes fraud, malice, and oppression within the meaning of California Civil Code § 3294.

208.          Plaintiff is now in imminent harm of losing her principal residence due to the willful and malicious conduct of the Defendants.

209.          Therefore, Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

### EIGHTH CAUSE OF ACTION

### (NEGLIGENCE)

### (Against Shellpoint Mortgage Servicing)

210.          Plaintiff realleges and incorporates by reference all preceding paragraphs**.**

211.          Defendants owe plaintiff an ordinary duty of care in performance of their business practices as it relates to the servicing of the mortgage, the conduct of the mortgage foreclosure process, and the loan modification process.

212.          There is a close connection between Shellpoint Mortgage Servicing's conduct and any injury actually suffered, because, to the extent Mrs. Medel otherwise qualified and would have been granted a modification, Shellpoint Mortgage Servicing's conduct in misdirecting the papers submitted by Mrs. Medel directly precluded the loan modification application from being timely processed.

213.          The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis.  *See, e.g.*, California Civil Code § 2923.6

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); see

2 also, MakingHomeAffordable.gov.

3     214.     The policy of preventing future harm also strongly favors imposing a duty of care

4 on Shellpoint Mortgage Servicing Mortgage Servicers and the underlying note holder. "[T]he

5 California Legislature has expressed a strong preference for fostering more cooperative relations

6 between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost."

7 The Homeowners' Bill of Rights also requires mortgage services to provide borrowers with a

8 single point of contact "responsible for doing all of the following:

9     (1) Communicating the process by which a borrower may apply for an available

10 foreclosure prevention alternative and the deadline for any required submissions to be considered

11 for these options.

12     (2) Coordinating receipt of all documents associated with available foreclosure

13 prevention alternatives and notifying the borrower of any missing documents necessary to

14 complete the application.

15     (3) Having access to current information and personnel sufficient to timely,

16 accurately, and adequately inform the borrower of the current status of the foreclosure prevention

17 alternative.

18     (4) Ensuring that a borrower is considered for all foreclosure prevention

19 alternatives offered by, or through, the mortgage servicer, if any.

20     (5) Having access to individuals with the ability and authority to stop foreclosure

21 proceedings when necessary.

22     215.     The defendants' compliance with Homeowners' Bill of Rights is required under

23 California law.

24     216.     As such, it is part of the ordinary duty of care that the Defendants owe to any

25 borrower, such as plaintiff, that they follow the required procedures of Homeowners' Bill of

26 Rights.

27     217.     Shellpoint Mortgage Servicing and the underlying note holder owe a duty to

28 exercise reasonable care in the review of the loan modification applications once they have

COMPLAINT

*Medel v. New Penn Financial, LLC*

agreed to consider them.  Recent court decisions recognize that a lender does owe a borrower a duty of care in negotiating or processing an application for a loan modification.

218.     Shellpoint Mortgage Servicing and the underlying note holder owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale.

219.     Shellpoint Mortgage Servicing and the underlying note holder owe Mrs. Medel a duty of care in processing her loan modification application.

(1) The transaction was unquestionably intended to affect Mrs. Medel.

(2)  The decision on Mrs. Medel's loan modification application would determine whether or not she could keep her home.

(3) The potential harm to Mrs. Medel from mishandling the application processing was readily foreseeable: the loss of an opportunity to keep her home was the inevitable outcome.

(4) The mishandling of the documents deprived Mrs. Medel of the possibility of obtaining the requested relief.

220.     Shellpoint Mortgage Servicing agreed to conduct its review of the loan modification in accordance with the rules and regulations of the federal Home Affordable Modification Program and that having done so it owed Mrs. Medel the duty to exercise reasonable care in processing and reviewing the applications for loan modifications in accordance with the federal Home Affordable Modification Program guidelines.

221.     Shellpoint Mortgage Servicing and the underlying note holder breached their duty by

(1)     failing to review Mrs. Medel's applications in a timely manner,

(2)     mishandling Mrs. Medel's applications by relying on incorrect information,

(3)     making material misrepresentations about the loan modification such as who would make the final determination, how long the determination would take, what documents would be reviewed, telling Mrs. Medel that she would not receive a loan modification, and that there was no basis for an appeal of a denial,

COMPLAINT
*Medel v.  New Penn Financial, LLC*

(4)    demanding that Mrs. Medel provide the same documents more than once although they had already been provided,

(5)    demanding that Mrs. Medel provide documents that were not relevant to any underwriting consideration,

(6)    failing to provide one point of contact pursuant to California's Homeowner's Bill of Rights,

(7)    failing to provide clear and concise guidelines for underwriting a loan modification,

(8)    failing to consider alternative (longer) amortization schedules to allow Mrs. Medel to pay the loan,

(9)    failing to consider a principal reduction to facilitate a loan modification,

(10)    failing to have an appropriately licensed underwriter assigned to Mrs. Medel's loan modification request,

(11)    failing to have an appropriately licensed underwriter actually review Mrs. Medel's loan modification request,

(12)    failing to have an appropriately licensed underwriter actually perform mathematical calculations to determine possible modification scenarios,

(13)    delegating the file review to unlicensed and unqualified clerical personnel who lack the formal education and experience of a licensed underwriter,

(14)    delegating the file review to personnel who are unqualified to make a fair or competent determination involving a loan modification,

(15)    delegating the file review to personnel who were trained how to and to deny a loan modification request,

(16)    maintaining internal policies requiring that requests for loan modifications be denied, and

(17)    failing to consider the costs of foreclosure and benefits of allocating some of the foreclosure losses so that the current note holders remain in as good of a position as if it foreclosed, yet allow the borrower to remain in the property.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

222.     As clearly stated above, defendants are in violation of numerous provisions of Homeowners' Bill of Rights.

223.     Consequently, defendants are in breach of their ordinary duty of care to plaintiff.

224.     Because of Defendants' actions, Plaintiff will lose title to her owner-occupied residential real property by an illegal foreclosure sale on March 9, 2015, if an injunction is not issued to enjoin the Defendants from selling the Plaintiff's house until final disposition of this litigation.

225.     Plaintiff has been directly injured by the defendant's breach of their duty of ordinary care.

226.     Defendants have breached their duty of care toward Mrs. Medel and were negligent.

227.     Plaintiff seeks injunctive and declaratory relief against the defendants and damages according to proof at trial.

## NINTH CAUSE OF ACTION

**(Tortious Breach of Implied Covenant of Good Faith and Fair Dealing)**

**(Against Shellpoint Mortgage Servicing)**

228.     Plaintiff realleges and incorporates by reference all preceding paragraphs**.**

229.     At all times herein mentioned, there existed an implied covenant of good faith and fair dealing between the loan servicer and borrower while engaged in a loan modification process.

230.     Plaintiff alleges that Shellpoint Mortgage Servicing utterly failed to investigate the facts, deceitfully distorted facts, and purposely disregarded facts, which established a potential loan modification for Plaintiff.   Shellpoint Mortgage Servicing purposely distorted facts to support their wrongful denial of a loan modification.

231.     Shellpoint Mortgage Servicing did not have reasonable basis for denying a loan modification.

232.     Shellpoint Mortgage Servicing's refusal to acknowledge receipt of documents, multiple requests for the same documents, and failure to engage fairly in the loan modification

COMPLAINT
*Medel v.  New Penn Financial, LLC*

process served a dishonest purpose and a self-interest, and was a breach of an implied duty of good faith and fair dealing.

233.     Plaintiff further alleges, upon information and belief, that it is the modus operandi of defendant Shellpoint Mortgage Servicing, and its agents, to engage in dishonest and unfair business practices to deny a loan modification to its borrowers.

234.     Plaintiff is informed and believe and thereon allege that Shellpoint Mortgage Servicing maintains inter-office memoranda, correspondence, and written guidelines and policies containing instructions for its agents and employees to carry out its unlawful purposes of wrongful denial of loan modifications.

235.     Plaintiff is informed and believes, and thereon alleges, Shellpoint Mortgage Servicing's behavior toward Mrs. Medel in this matter was, and is, indicative of a broader recalcitrance to fairly honor contractual obligations and the rule of law, manifests a high degree of reprehensible conduct, and that Shellpoint Mortgage Servicing has a nationwide practice of refusing to engage fairly in the loan modification process, all of which constitute a "bad faith" breach of the implied covenant of good faith and fair dealing under the servicing contract and loan modification process.

236.     Shellpoint Mortgage Servicing and the underlying note holder have breached the covenant of good faith and fair dealing in connection with the evaluation of a loan modification for Rocio Medel.

237.      As a proximate result of defendant's conduct and breach of the implied covenant of good faith and fair dealing, Plaintiff  has suffered damages according to proof at trial.

238.     In committing the acts described herein, Shellpoint Mortgage Servicing acted in a reprehensible conscious disregard of Plaintiff's rights and is guilty of malice, fraud and oppression.

239.     The Defendant's conduct warrants an appropriate measure of punitive damages to punish defendant and deter others from engaging in similar wrongful conduct.

COMPLAINT

*Medel v.  New Penn Financial, LLC*

## TENTH CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

240.     Under California law, it is well-settled that real property is unique and that the legal remedy of money damages would be insufficient to compensate Mrs. Medel if her home is taken from her. *Stockton vs. Newman* (1957) 148 CA 2d 558, and *Daniels vs. Williams*, 125 CA 2d 310.

241.     The injury to Mrs. Medel is certain, in that she lost the opportunity of obtaining a loan modification and she will lose her home if the loan modification is not properly handled and reviewed.

242.     Mrs. Medel is in danger of being deprived of her home by foreclosure sale on March 9, 2015.  Therefore, immediate action is required to prevent this harm.   She respectfully requests an injunction preventing the sale of her home until such time as her case is heard and adjudicated on its merits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:

1.     That the foreclosure sale scheduled for March 9, 2015 be enjoined;

2.     That defendants be enjoined from pursuing a non-judicial foreclosure action against Plaintiff and selling the subject real property during the pendency of this action and until further order of the court;

3.     That Defendants be required by the court to comply with the Homeowners' Bill of Rights procedures and restart the loan modification process for the plaintiff;

4.     For permanent injunctive relief as permitted under the Unfair Business Law, Business & Professions Code § § 17203;

5.     For an order enjoining all Defendants, their employees, agents, representatives, successors, assigns, and all persons who act in concert with them, from committing any

COMPLAINT

*Medel v.  New Penn Financial, LLC*

1   acts of unfair competition alleged in the Complaint, pursuant to Business and Professions

2   Code § 17203 and the Consumers Legal Remedies Act;

3   6.    Pursuant to Business and Professions Code § 17206, that Defendants, and each of them,

4         be ordered to pay a civil penalty in the amount of two thousand five hundred dollars

5         ($2,500.00) for each violation of Business and Professions Code § 17200 by Defendants,

6         in an amount according to proof;

7   7.    For incidental, consequential, and actual damages according to proof;

8   8.    For punitive damages;

9   9.    For pre judgment interest;

10  10.   For attorney's fees and costs of suit herein incurred; and

11  11.   For such other and further relief as the court may deem proper.

12  Dated: March 4, 2015.                         Respectfully submitted,

13                                                LAW OFFICE of GRENVILLE PRIDHAM, ESQ.

14                                                */s/ Grenville Pridham*
                                                  **GRENVILLE PRIDHAM, ESQ.**
15                                                CA Bar No.  120695
                                                  2230 West Chapman Avenue
16                                                Orange, CA  92868
                                                  Phone:   714-486-5144
17                                                grenville@grenvillepridham.com
                                                  Attorney for Plaintiff Rocio Medel

18

19  **TRIAL BY JURY IS DEMANDED**

20  Respectfully submitted by Counsel

21  Grenville Pridham, Esq.

22      */s/ Grenville Pridham*
23  **Grenville Pridham, Esq.**
    Tel: (714) 486-5144
24  Attorney for Plaintiff,
    Rocio Medel

25

26

27

28

COMPLAINT
*Medel v.  New Penn Financial, LLC*